IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

MICHAEL J. DAUGHERTY and
LABMD, INC.,

                  Plaintiffs,              CIVIL ACTION NO. 1:16-cv-02480-LMM

        v.

                                  *Electronically Filed*

JOEL P. ADAMS, et al.,

                  Defendants.

---

## LARRY PONEMON'S BRIEF IN SUPPORT OF
## MOTION TO DISMISS

---

Matthew G. Moffett
Georgia Bar No. 515323
Tynetra G. Evans
Georgia Bar No. 422171
GRAY, RUST, ST. AMAND,
MOFFETT & BRIESKE
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326
(404) 870-7390 – telephone
(404) 870-1030 – facsimile
mmoffett@grsmb.com
tevans@grsmb.com

Steven W. Zoffer
(*pro hac vice admission pending*)
Brett W. Farrar
(*pro hac vice admission pending*)Michael P. Flynn
(*pro hac vice admission pending*)
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
(412) 281-7272 – telephone
(412) 392-5367 – facsimile
szoffer@dmclaw.com
bfarrar@dmclaw.com
mflynn@dmclaw.com

*Counsel for Defendant Larry Ponemon*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

I.   Introduction ................................................................ 1

II.  Factual Background ....................................................... 2

   A.   The First Georgia Action ............................................ 2

   B.   The Pennsylvania Action ............................................ 3

   C.   The Second Georgia Action ......................................... 5

III. The Complaint Should Be Dismissed Because the Court Lacks Personal Jurisdiction Over Defendant Ponemon. ...................... 7

   A.   Standard .............................................................. 7

   B.   Georgia's long arm statute .......................................... 8

      1.   Subsection O.C.G.A. § 9-10-91(2) of the Georgia long arm statute does not provide for personal jurisdiction over Defendant Ponemon in this instance. ........................................................ 9

      2.   Subsection O.C.G.A. § 9-10-91(3) of the Georgia long arm statute does not provide for personal jurisdiction over Defendant Ponemon in this instance. ........................................................ 12

      3.   Subsection O.C.G.A. § 9-10-91(1) of the Georgia long arm statute does not provide for personal jurisdiction over Defendant Ponemon in this instance. ........................................................ 13

   C.   Constitutional Due Process .......................................... 13

IV.  The Complaint Should Be Dismissed Because Plaintiffs' Claims Are Untimely. .......................................................... 15

   A.   Federal RICO Conspiracy ........................................... 20

   B.   Georgia RICO and Georgia RICO Conspiracy ..................... 23

V.   The Complaint Should Be Dismissed Because the Complaint Fails to State a Claim for Which Relief Can Be Granted under Iqbal and Twombly. ................................................... 24

VI.    Defendant's Actions Are Not The Proximate Cause Of
       Plaintiffs' Injury........................................................................... 29

VII.   Counts II and IV of the Complaint Must Be Dismissed Because
       No Substantive RICO Claims Are Asserted Against Defendant. ............ 31

VIII.  Count XI of the Complaint Should Be Dismissed Because There
       is no Underlying Tort to Support the Common Law Conspiracy
       Claim............................................................................................ 32

IX.    Count XII of the Complaint Must Be Dismissed Because There
       is no Cause of Action in Georgia for Attorneys' Fees and
       Expenses. .................................................................................... 33

X.     Michael Daugherty Lacks Standing To Bring His RICO Claims. ........... 33

XI.    Conclusion .................................................................................... 35

CERTIFICATE OF COMPLIANCE AS TO FONT SIZE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**Cases**

Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987) ..................................................21

Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82n. 6 (2nd Cir. 2006) ...........................................................34

Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283 (11th Cir. 2010)........... 26, 27, 32

American Ass'n of Cab Companies, Inc. v. Parham, 661 S.E.2d 161 (Ga. Ct. App. 2008)........................................................................................29

Ameritech.com, LLC v. Walker, 719 S.E.2d 489 (Ga. 2011) ................................10

Anderson v. Deas, 632 S.E.2d 682 (Ga. Ct. App. 2006) .........................................10

Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006)...................................................................................29

Ardis v. Anderson, 2015 U.S. Dist. LEXIS 15411, 2015 WL 521080, at *4 (N.D. Fla. 2015) ......................................................................................12

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................................................................................. passim

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)................................................................................. passim

Bivens Gardens Office Bldg. v. Barnett Banks, Inc., 140 F.3d 898 (11th Cir. 1998) .................................................................................................34

Blalock v. Anneewakee, Inc., 426 S.E.2d 165 (Ga. Ct. App. 1992) ......................24

Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055 (11th Cir. 1986) .........................................................................................15

Bowers v. Branch Banking & Trust Co., 2015 U.S. Dist. LEXIS 88298 (M.D. Ga. July 8, 2015) ......................................................................... 26, 32

Brantley v. Muscogee County School Dist., No. 4:10-CV-77 (CDL), 2011 WL 3706567, at *8 (M.D.Ga. Aug. 24, 2011)...........................................30

Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364 (11th Cir. 1997) .................................................................................................27

Brown v. Baker, 398 S.E.2d 797 (Ga. Ct. App. 1990) ............................................33

Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ................................................................................................13

Burgess v. Religious Tech. Ctr., Inc., 600 Fed. Appx. 657 (11th Cir. 2015) ...........26

Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) .............10

Charles H. Wesley Educ. Found, Inc. v. Cox, 408 F.3d 1349 (11th Cir. 2011)...............................................................................................................25

Charlie Fowler Evangelistic Ass'n v. Cessna Aircraft Co., 911 F.2d 1564 (11th Cir. 1990) .................................................................................................8

Cochran Mill Assocs. v. Stephens, 648 S.E.2d 764 (Ga. Ct. App. 2007) ..............24

Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286 (11th Cir. 2000) ......................15

Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) ................................................................. 8, 9, 13, 14

DigiProtect USA Corp. v. Doe, 2011 U.S. Dist. LEXIS 109464, *8-9 (S.D.N.Y. 2011) ...........................................................................................14

Endsley v. City of Macon, 321 F.App'x 811 (11th Cir. 2008)................................12

ETS Payphone v. TK Indus., 513 S.E.2d 257 (Ga. Ct. App. 1999) ......................12

Exceptional Marketing Group, Inc. v. Jones, 749 F. Supp. 2d 1352 (N.D. Ga. 2010).................................................................................................8

Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276 (11th Cir. 2007) ................26

Ga. Cash Am., Inc. v. Greene, 734 S.E.2d 67, 76 (Ga. Ct. App. 2012) ..................10

Gust v. Flint, 356 S.E.2d 513 (Ga. 1987) ..............................................................12

Hemi Grp., LLC v. City of New York, 559 U.S. 1, 17, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) ...................................................................................29

Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) ...................................................................29

Huggins v. Boyd, 697 S.E.2d 253 (Ga. Ct. App. 2010) ......................................9, 10

Iguana, LLC v. Lanham, 628 F.Supp.2d 1361 (M.D. Ga. 2008) ...........................32

In the Matter of LabMD, Inc., Docket No. 9357 ............................................. 30, 31

Jackson v. Bellsouth Telecommunications, 372 F.3d 1250 (11th Cir. 2004).................................................................................................32

iv

Jordan Outdoor Enterprises, Ltd. v. That 70's Store, 819 F. Supp. 2d
    1338 (M.D.Ga. 2011) ................................................................. 10, 13

Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 708 n. 13, 104 S. Ct.
    1473, 79 L. Ed. 2d 790 (1984) ........................................................10

LabMD, Inc. v. Tiversa Holding Corp., et al., Civil Action
    No. 2:15-cv-92 ...............................................................................3

LabMD, Inc. v. Tiversa Holding Corp., No. 2:15-CV-92, 2016 WL
    693014, at *5 (W.D. Pa. Feb. 22, 2016) ..........................................4

LabMD, Inc. v. Tiversa Holding Corp., No. CIV.A. 15-92, 2015 WL
    1213043, at *1 (W.D. Pa. Mar. 17, 2015) .........................................4

LabMD, Inc. v. Tiversa, Inc., 509 F.App'x 842 (11th Cir. 2013). ............3

LabMD, Inc. v. Tiversa, Inc., Civil Action No. 1:11-cv-4044-LMM ......3

LabMD, Inc. v. Tiversa, Inc., No. 1:11-CV-4044-LMM, 2016 WL
    3695381, at *6 (N.D. Ga. May 13, 2016) ..........................................3

LabMD, Inc. v. Tiversa, Inc., No. 11-cv-4044, 2012 WL 12542448 (N.D.
    Ga. Aug. 15, 2012) ......................................................................3, 11

Lamb v. Salvage Disposal Co., 535 S.E.2d 258 (Ga. Ct. App. 2000) ....................33

Lawrence v. Thornburg Mortg. Home Loans Inc., 624 Fed. Appx. 721
    (11th Cir. 2015) .............................................................................26

Lehman v. Lucom, 2012 U.S. Dist. LEXIS 69057, 8-9 (S.D. Fla. May 17,
    2012) ..............................................................................................21

Madara v. Hall, 916 F.2d. 1510 (11th Cir. 1990) ........................................8

Mahmud v. Oberman, 508 F. Supp. 2d 1294, 1301 (N.D. Ga. 2007) ......................8

McNear v. Wells Fargo Bank, N.A., 2015 U.S. Dist. LEXIS 181053, at
    *27 n.19 (N.D. Ga. 2015) ...............................................................12

Meyn America, LLC v. Tarheel Distributors, Inc., et al., 36 F. Supp. 3d
    1395 (M.D. Ga. 2014) .....................................................................10

Monge v. Madison County Record, Inc., 802 F. Supp. 2d 1327 (N.D. Ga.
    2011) ..............................................................................................33

Morast v. Lance, 807 F.2d 926 (11th Cir. 1987) ............................... 23, 32

Mustaqeem-Graydon v. Sun Trust Bank, 258 Ga. Ct. App. 200 (2002) ................32

Nalley v. Langdale, 734 S.E.2d 908, 915 n.15 (Ga. 2012) (M.D. Ga. July 8, 2015)................................................................................32

Oldfield v. Pueblo de Bahia Lora, 558 F.3d 1210 (11th Cir. 2009) ........................14

Pac. Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F.3d 1246 (11th Cir. 2001)...................................................................................21

Rotella v. Wood, 528 U.S. 549 (2000) ....................................................21

Serpentfoot v. Rome City Commission, et al., 426 Fed. Appx. 884 (11th Cir. 2011) .................................................................................21

Simpson v. Sanderson Farms, Inc., 744 F.3d 702 (11th Cir. 2014) ........................29

Smith v. Air Ambulance Network, 427 S.E.2d 305 (Ga. Ct. App. 1993) ...............13

Sol Melia, SA v. Brown, 688 S.E.2d 675 (Ga. Ct. App. 2009) ..................................9

Southern Intermodal Logistics v. D. J. Powers Co., 10 F. Supp. 2d 1337 (S.D. Ga. 1998) ..........................................................................24

United States ex rel. Atkins v. McInteer, 470 F.3d 1350 (11th Cir. 2006) ..............27

United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301 (11th Cir. 2002) .................................................................................27

Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x. 52, 53–54 (11th Cir. 2006) .................................................................................19

Websters Chalk Paint Powder, LLC v. Annie Sloan Interiors, Ltd., 2014 U.S. Dist. LEXIS 114663, *12-17 (N.D. Ga. 2014) ...........................................11

Williams General Corp. v. Stone, 614 S.E.2d 758 (Ga. 2005) ................... 23, 30, 32

Williams v. Mohawk Indus., Inc., 465 F.3d 1277 (11th Cir. 2006) (per curium) ............................................................................ 29, 34

**Other Authorities**

16 C.F.R. § 3.11(a).................................................................................30

18 U.S.C. § 1962(c) ............................................................................4, 26

18 U.S.C. § 1962(d) ...................................................................... 4, 5, 20, 26

18 U.S.C. § 1964(c) .................................................................................34

F.R.C.P. 12(b)(1)............................................................................ 33, 34

F.R.C.P. 12(b)(2)...................................................................................7

F.R.C.P. 60(d)(3)...................................................................................3

F.R.C.P. 9(b) ........................................................................................27

O.C.G.A § 13-6-11 ..............................................................................33

O.C.G.A. § 16-14-4(c) ...........................................................................5

O.C.G.A. § 16-14-6(c) .........................................................................29

O.C.G.A. § 16-14-8 .............................................................................23

O.C.G.A. § 16-9-93 .............................................................................20

O.C.G.A. § 9-10-91 ...............................................................................9

O.C.G.A. § 9-10-91(1) .........................................................................13

O.C.G.A. § 9-10-91(2) ...........................................................................9

O.C.G.A. § 9-10-91(3) ................................................................... 12, 13

## I.      Introduction

Plaintiff LabMD, Inc. ("LabMD") has filed numerous lawsuits alleging injury as a result of Tiversa Holding Corp., Inc. ("Tiversa") allegedly stealing a patient records file (the "1718 File") from a LabMD computer and using that file to attempt to extort LabMD to use Tiversa's services. LabMD's filed its first lawsuit on October 19, 2011 in Georgia state court, which was removed to the United States District Court for the Northern District of Georgia and dismissed. LabMD filed a second action in the Western District of Pennsylvania, a portion of which is currently pending, on or about January 21, 2015, which contained nearly identical allegations regarding Tiversa's alleged theft of the 1718 File and attempted extortion relating to the file.

Now, more than eight years after Tiversa allegedly stole the 1718 File, LabMD and Michael J. Daugherty, LabMD's Chief Executive Officer and sole shareholder, (collectively, "Plaintiffs") allege the same facts and claims once again. This time, however, Plaintiffs include claims against multiple individual Defendants who have, or had, some association with Tiversa, including individuals who worked for Tiversa as employees, officers, directors, or advisory board members, or who otherwise provided services on behalf of Tiversa.

The claims asserted in the instant action continue to be without merit.  *First*, similar to other prior actions, this Court lacks jurisdiction over the individual Defendants.  *Second*, the claims against the individual Defendants are time barred. Plaintiffs were well aware of their perceived claims yet elected not to pursue those claims within the appropriate time period.  *Third*, Plaintiffs' claims fail because they do not satisfy the Iqbal and Twombly pleading standards.  *Fourth*, the individual Defendants are not the direct cause of Plaintiffs' alleged damages. *Fifth*, Plaintiffs' RICO conspiracy counts should be dismissed because either there are no substantive RICO claims asserted against Defendants, or any substantive claim asserted is not properly pled.  *Sixth*, there are no causes of action for common law conspiracy without an underlying tort or attorneys' fees and expenses in Georgia.

## II.   Factual Background

This action is Plaintiffs' latest attempt to re-litigate meritless claims already dismissed by this Court and currently pending in another jurisdiction.

### A.   The First Georgia Action

On October 19, 2011 LabMD filed an action against, among others, Tiversa, in the Superior Court of Fulton County, Georgia.  Tiversa removed the case to federal district court.  LabMD, Inc. v.  Tiversa, Inc.,  Civil  Action

No. 1:11-cv-4044-LMM ("Georgia II").  LabMD's claims arose out of Tiversa's alleged unauthorized download of the 1718 File that was created and stored by LabMD.  LabMD claimed Tiversa intentionally accessed LabMD's computers and networks to download the 1718 File without authorization.  Tiversa successfully dismissed the complaint for lack of personal jurisdiction.  LabMD, Inc. v. Tiversa, Inc., No. 11-cv-4044, 2012 WL 12542448 (N.D. Ga. Aug. 15, 2012).  The Eleventh Circuit affirmed the dismissal.  LabMD, Inc. v. Tiversa, Inc., 509 F.App'x 842 (11th Cir. 2013).  In January 2016, LabMD filed a Rule 60(d)(3) Motion for Relief from Judgment and a Motion for Discovery to reopen Georgia II. LabMD alleged it discovered evidence of purported fraud on the Court by Tiversa's counsel at that time.  The Court ultimately denied LabMD's motion. LabMD, Inc. v. Tiversa, Inc., No. 1:11-CV-4044-LMM, 2016 WL 3695381, at *6 (N.D. Ga. May 13, 2016).

   **B.    The Pennsylvania Action**

   LabMD thereafter filed essentially the same litigation in the Western District of Pennsylvania on January 21, 2015.  LabMD, Inc. v. Tiversa Holding Corp., et al., Civil Action No. 2:15-cv-92 (the "Pennsylvania Action").  The Complaint asserted, among other things, claims for fraud, negligent misrepresentation, and civil conspiracy, as well as  violations of the federal RICO Act, 18 U.S.C.

§§ 1962(c) and (d). The causes of action focused upon LabMD's allegations that LabMD's computer systems were hacked to obtain personal identifying information and personal health information, followed by attempts to extort or scare LabMD into using Tiversa's services. LabMD alleged Tiversa created the data security breach that needed to be solved. LabMD further claimed that once it refused Tiversa's services, Tiversa reported LabMD to the FTC for failed data security protocols and for allowing personal confidential information to be accessed.

Defendants filed a motion to dismiss that was ultimately granted dismissing, among other things, the RICO claims with prejudice because the claims were untimely. LabMD, Inc. v. Tiversa Holding Corp., No. CIV.A. 15-92, 2015 WL 1213043, at *1 (W.D. Pa. Mar. 17, 2015). LabMD moved for reconsideration of this ruling. The Court denied LabMD's motion, noting that the motion was LabMD's "second (or third) bite at the apple after its arguments were not accepted before." LabMD, Inc. v. Tiversa Holding Corp., No. 2:15-CV-92, 2016 WL 693014, at *5 (W.D. Pa. Feb. 22, 2016).

On February 12, 2016, LabMD filed another complaint, attempting to reassert claims, including fraud, negligent misrepresentation, and civil conspiracy claims. Defendants filed a motion to dismiss, which remains pending. Shortly

4

after this instant Georgia action was initiated, Tiversa filed a motion on September 7, 2016 requesting the Western District of Pennsylvania, as the first-filed court, enjoin Plaintiffs from prosecuting the instant action. That motion filed in the Western District of Pennsylvania also remains pending.

### C.    The Second Georgia Action

On July 8, 2016, Plaintiffs filed the instant action asserting several causes of action against Defendant Ponemon: federal RICO conspiracy (18 U.S.C. § 1962(d)) (Count II), Georgia RICO Conspiracy (O.C.G.A. § 16-14-4(c)) (Count IV), Common Law Conspiracy (Count XI) and Attorneys' Fees and Expenses (Count XII). The claims in this Georgia action once again center on allegations that Tiversa took the 1718 File from LabMD and then offered to return the file for an extorted fee. LabMD again makes the same allegations asserted in prior litigation related to Tiversa's proprietary technologies, the 1718 File, and alleged collusion with the FTC.

The vast majority of the allegations in the Complaint center upon Tiversa. Plaintiffs allege that: in 2008 and 2009 Tiversa compiled a list of companies that refused Tiversa's services after Tiversa allegedly found confidential files on the peer-to-peer ("P2P") network (Complaint, ¶ 89); that in 2008 Tiversa "hacked" into computers at LabMD and downloaded the 1718 File (Complaint, ¶¶ 150-152);

and that on May 13, 2008, Tiversa reported to LabMD that Tiversa had found the 1718 file and LabMD "[i]mmediately" investigated, discovering that a billing computer had P2P software installed (Complaint, ¶¶ 174-175).   Plaintiffs acknowledge the FTC approached Tiversa regarding companies with data breaches and on January 19, 2010, the FTC informed LabMD that it would be investigating LabMD's information security practices.   (Complaint, ¶ 212, Exhibit O to Complaint)   By September 30, 2010, LabMD sent Tiversa correspondence requiring the return of the 1718 File.  (Complaint, ¶ 321; Exhibit Q to Complaint) The correspondence notes that LabMD conducted an investigation into the "abuse and misappropriation of LabMD's property that may have involved any number of legal infractions…" Id.

With respect to Defendant Ponemon, Plaintiffs allege he owns, or has owned, Tiversa shares and serves, or has served, on Tiversa's Advisory Board. (Complaint, ¶¶ 39-40)  Plaintiffs allege the Advisory Board was created to help generate business and promote Tiversa, and helped implement its business model. (Complaint, ¶¶ 111-114)   Ponemon promoted Tiversa on numerous occasions, including on April 22, 2008 by publishing a report discussing Tiversa's role in addressing peer-to-peer data security and on March 4, 2009 in a newspaper article. (Complaint, ¶¶ 118-120)

Plaintiffs further allege Defendant Ponemon knew and advised Tiversa that it should never admit to accessing, reviewing, downloading, storing or transferring files directly from the computers of the file owners because it would be illegal to do so;  knew that Tiversa regularly concealed its illegal taking of files, and participated in and encouraged this practice; knew and encouraged that Tiversa regularly lied about files being publicly available and made fraudulent statements regarding disclosure, spread, and bad actors to owners of the files to generate revenue; knew and encouraged that when Tiversa contacted companies to sell services, its practice was to (1) explain a security breach occurred and it found the company's file(s) on a P2P network, (2) explain files contain private/confidential information, (3) not reveal the source of information, (4) tell potential customers that Tiversa did not record IP information, and (5) offer services to fix the problem; and advised and profited from Tiversa because he believed no one could disprove the lies and fraud perpetrated by Tiversa.  (Complaint, ¶¶ 144-148)

## III.   The Complaint Should Be Dismissed Because the Court Lacks Personal Jurisdiction Over Defendant Ponemon.

### A.   Standard

A motion to dismiss for lack of personal jurisdiction is permitted under Federal Rule of Civil Procedure 12(b)(2).  In this instance, this Court cannot exercise personal jurisdiction over a defendant unless a plaintiff demonstrates that

jurisdiction is (1) appropriate under Georgia's long arm statute and (2) comports with Due Process requirements of the United States Constitution.  Madara v. Hall, 916 F.2d. 1510, 1514 (11th Cir. 1990); Mahmud v. Oberman, 508 F. Supp. 2d 1294, 1301 (N.D. Ga. 2007).  This Court is bound by the same limitations on the exercise of jurisdiction over nonresident defendants as are Georgia courts.  Charlie Fowler Evangelistic Ass'n v. Cessna Aircraft Co., 911 F.2d 1564, 1565 (11th Cir. 1990).  A plaintiff seeking to exercise personal jurisdiction over a nonresident defendant bears the burden of alleging facts in the complaint sufficient to make out a prima facie case of jurisdiction.  Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010); Exceptional Marketing Group, Inc. v. Jones, 749 F. Supp. 2d 1352, 1357 (N.D. Ga. 2010).  If the defendant challenges jurisdiction and submits affidavit evidence challenging the allegations in the complaint, the burden shifts back to the plaintiff to provide evidence supporting jurisdiction. Id.

### B.    Georgia's long arm statute

Georgia's long arm statute provides that a court may exercise personal jurisdiction over a nonresident defendant if the nonresident "(1) [t]ransacts business within [Georgia]; (2) [c]ommits a tortious act or omission within [Georgia]; [or] [c]ommits a tortious injury in [Georgia] caused by an act or

omission outside of [Georgia] if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]."   O.C.G.A. § 9-10-91.   This Court applies and interprets the Georgia long arm statute the same way as the Georgia Supreme Court.   Diamond Crystal Brands, Inc., 593 F.2d 1249, 1258.

### 1. Subsection O.C.G.A. § 9-10-91(2) of the Georgia long arm statute does not provide for personal jurisdiction over Defendant Ponemon in this instance.

Plaintiffs allege their basis for personal jurisdiction against Defendant Ponemon because *Tiversa* accessed computer files located in Atlanta, Georgia from *Tiversa's* operations in Pittsburgh, Pennsylvania.   (Complaint, ¶¶ 150, 152-157)   Such activities do not establish personal jurisdiction over Defendant Ponemon in this matter.   Georgia's long arm statute applies when a defendant commits a tortious act within the state.   O.C.G.A. § 9-10-91(2).   In order for a nonresident defendant to be sued in Georgia, the nonresident must have purposefully directed its activities to residents in the forum, and the litigation must result from alleged injuries that arise out of or relate to activities that took place within Georgia.   Sol Melia, SA v. Brown, 688 S.E.2d 675 (Ga. Ct. App. 2009); Huggins v. Boyd, 697 S.E.2d 253 (Ga. Ct. App. 2010); Anderson v. Deas, 632

S.E.2d 682, 682-84 (Ga. Ct. App. 2006). Georgia courts have further ruled that for purposes of establishing personal jurisdiction when electronic communications are at issue, jurisdiction is established in the place where the communications originate. See Jordan Outdoor Enterprises, Ltd. v. That 70's Store, 819 F. Supp. 2d 1338, 1345-1346 (M.D.Ga. 2011); Huggins, 697 S.E.2d at 255 and Anderson, 632 S.E.2d at 682-84.

Moreover, Defendant Ponemon is legally separate and apart from Tiversa. It is well established that a corporation and its officers and employees are separate legal entities, act separately and have separate labilities. Ga. Cash Am., Inc. v. Greene, 734 S.E.2d 67, 76 (Ga. Ct. App. 2012). Further, it is clear that if personal jurisdiction exists over a corporation, this does not, *ipso facto*, mean that personal jurisdiction also exist for officers or employees of the same corporation. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 708 n. 13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984); Ameritech.com, LLC v. Walker, 719 S.E.2d 489, 494 (Ga. 2011). Rather, the corporation's officer's or employee's conduct is assessed individually to determine if the person can be subjected to an action in the forum based upon personal jurisdiction. Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984); Meyn America, LLC v. Tarheel Distributors, Inc., et al., 36 F. Supp. 3d 1395, 1403-05 (M.D. Ga. 2014); Websters Chalk Paint Powder, LLC v.

<u>Annie Sloan Interiors, Ltd.</u>, 2014 U.S. Dist. LEXIS 114663, *12-17 (N.D. Ga. 2014).

There are no allegations that Defendant Ponemon committed any tortious act or omission in connection with transacting business in Georgia that could form the basis for personal jurisdiction in Georgia over that defendant.  Defendant did not engage in *any* conduct in Georgia.  Defendant Ponemon is not registered to do business in Georgia, provides no services in Georgia, has no customers in Georgia, derives no revenue from business activities in Georgia, does not advertise or solicit business in Georgia, does not own property in Georgia, did not commit a tortious act in Georgia, does not transact business in Georgia and does not engage in a persistent course of conduct in Georgia.   (Affidavit, Exhibit A, ¶¶ 2, 4, 8) Plaintiffs have not produced any competent evidence to the contrary. The conduct giving rise to the alleged offense, Tiversa's alleged hacking of the 1718 file, occurred in Pennsylvania.  The computers utilized by Tiversa were located in Pennsylvania, not Georgia.  Simply put, no act or omission that forms the basis for Plaintiffs' claims occurred in Georgia.[1]  In addition, there are no allegations that

---

[1] This Court has already determined no personal jurisdiction exists over Tiversa for the events alleged in this matter and granted its motion to dismiss. <u>See LabMD, Inc. v. Tiversa, Inc., Trustees of Dartmouth College and M. Eric Johnson</u>, 2012 WL 12542448 (N.D. Ga. Aug. 15, 2012).  The motion to dismiss was
*(continued)*

Tiversa's corporate structure should be disregarded and that Defendant Ponemon has personal liability with respect to alleged actions of Tiversa.

> **2.      Subsection O.C.G.A. § 9-10-91(3) of the Georgia long arm statute does not provide for personal jurisdiction over Defendant Ponemon in this instance.**

When determining whether a defendant may be subject to personal jurisdiction under subsection (3), Georgia courts consider several factors, including whether a defendant (1) regularly does business or solicits business within Georgia; (2) engages in a persistent course of conduct within Georgia; (3) derives substantial revenue from services rendered within Georgia; (4) has employees located within Georgia; or (5) is authorized to do business within Georgia.  Gust v. Flint, 356 S.E.2d 513 (Ga. 1987); ETS Payphone v. TK Indus., 513 S.E.2d 257, 258-59 (Ga. Ct. App. 1999); Smith v. Air Ambulance Network, 427 S.E.2d 305

---

affirmed on appeal by the United States Court for Appeals for the Eleventh Circuit.  See LabMD, Inc. v. Tiversa, Inc., Trustees of Dartmouth College and M. Eric Johnson, 509 F.App'x 842 (11th Cir. 2013).  The nearly complete overlap of this action with the prior 2011 action may require dismissal under the doctrines of *res judicata* and issue preclusion. "  The Eleventh Circuit has recognized that a party may not avoid the application of res judicata by adding new parties." McNear v. Wells Fargo Bank, N.A., 2015 U.S. Dist. LEXIS 181053, at *27 n.19 (N.D. Ga. 2015), quoting Ardis v. Anderson, 2015 U.S. Dist. LEXIS 15411, 2015 WL 521080, at *4 (N.D. Fla. 2015).  The application of *res judicata* will not be precluded by additional parties so long as the claims are "predicated on the same operative facts which were the subject of the original suit."  McNear, 2015 U.S. Dist. LEXIS 181053, at *27 n.19, quoting Endsley v. City of Macon, 321 F.App'x 811, 813 (11th Cir. 2008).

(Ga. Ct. App. 1993).   Likewise, Defendant Ponemon is not subject to personal jurisdiction under O.C.G.A. § 9-10-91(3).

> **3.     Subsection O.C.G.A. § 9-10-91(1) of the Georgia long arm statute does not provide for personal jurisdiction over Defendant Ponemon in this instance.**

Defendant is not subject to personal jurisdiction under O.C.G.A. § 9-10-91(1).   Under subsection (1), a nonresident may be subject to personal jurisdiction in Georgia if it transacts any business within Georgia.   To meet this test, a nonresident defendant must purposefully do some act or consummate some transaction in Georgia.   Jordan Outdoor Enterprises, Ltd., 819 F. Supp. 2d at 1342, citing Diamond Crystal Brands, Inc., 593 F.2d 1249, 1260.   Plaintiffs have no allegations that Defendant Ponemon transacted business in Georgia or that Plaintiffs' claims arise from any such conduct or contacts.

> **C.     Constitutional Due Process**

The exercise of personal jurisdiction over Defendant Ponemon does not comport with Constitutional Due Process requirements.   Due Process requires that a defendant's conduct and connection with the forum state be such that he reasonably anticipates being hauled into court there.   Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); Diamond Crystal Brands, Inc., 593 F.2d at 1260.   As a result, states can only exercise jurisdiction

over persons who have established certain minimum contacts with the forum state so that traditional notions of fair play and substantial justice are not offended. Id.

There are two kinds of personal jurisdiction, specific and general. The fair warning requirement is satisfied in specific jurisdiction cases when the defendant purposefully directed his activities to the residents of the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities. There must be a significant nexus between the contacts and the litigation. Diamond Crystal Brands, Inc., 593 F.2d at 1260. The contact must be the "but for" cause of the plaintiff's claims. Oldfield v. Pueblo de Bahia Lora, 558 F.3d 1210, 1222-23 (11th Cir. 2009). There are no allegations Defendant Ponemon performed any activities in Georgia from which Plaintiffs' claims arise. It is not alleged that Defendant Ponemon downloaded the 1718 file, the act giving rise to Plaintiffs' Complaint, or any contacts with Georgia.[2] There is no "but for" causation for Plaintiffs' claims and Defendant Ponemon is not subject to personal jurisdiction.

---

[2] Even if Defendant did download the 1718 file, courts that have addressed whether downloading a file via P2P network is sufficient to subject a defendant to personal jurisdiction have determined that downloading a file is not sufficient because the defendant did not purposefully avail himself of the forum. See DigiProtect USA Corp. v. Doe, 2011 U.S. Dist. LEXIS 109464, *8-9 (S.D.N.Y. 2011).

Regarding general personal jurisdiction, this arises from a defendant's contacts with the forum that are unrelated to the cause of action litigated. The Due Process requirements are more stringent for general personal jurisdiction than for specific personal jurisdiction. <u>Consol. Dev. Corp. v. Sherritt, Inc.</u>, 216 F.3d 1286, 1292 (11th Cir. 2000). A state may constitutionally exercise general personal jurisdiction over a foreign person if there are continuous and systematic contacts between that foreign person and the state. <u>See</u> <u>Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.</u>, 786 F.2d 1055, 1057 (11th Cir. 1986). As discussed above (Affidavit, Exhibit A, ¶¶ 2, 4, 8), Defendant Ponemon's contacts with Georgia are insufficient to subject Defendant to either specific or general personal jurisdiction and the exercise of jurisdiction over Defendant would violate Due Process.

## IV. The Complaint Should Be Dismissed Because Plaintiffs' Claims Are Untimely.

Plaintiffs make certain allegations that are pertinent to a statute of limitations analysis. Plaintiffs allege that in February 2008 Tiversa accessed computer files stored on a LabMD computer in Atlanta, Georgia. (Complaint, ¶ 150) One of the files allegedly hacked by Tiversa was the 1718 File, which contained Personal Identifying Information and Personal Health Information for approximately 9,300 patients. Plaintiffs allege Tiversa did not have authority for permission to access, view, download or store the file. (Complaint, ¶¶ 153, 155) Plaintiffs also allege

Tiversa provided the file to Dartmouth College and M. Eric Johnson on or about April 29, 2008 in connection with a Dartmouth research paper, to CIGNA on or about April 18, 2008, and to the Federal Trade Commission on or about August 2009.  (Complaint, ¶¶ 167, 170, 172)

LabMD became aware of the issues of which it now complains as early as 2008.  Plaintiffs allege that on May 13, 2008, Tiversa falsely reported to John Boyle at LabMD that Tiversa (1) found the 1718 File on P2P networks, (2) did not know the actual source of the 1718 File and (3) did not know when Tiversa had obtained the 1718 File.  At that time, LabMD investigated and determined that the 1718 file was available on one of its computers because P2P software was installed on a LabMD billing computer.  (Complaint, ¶¶ 174-75)  On May 13, 2008, Tiversa also sent an email to John Boyle at LabMD identifying the same issues. (Complaint, ¶ 176; Exhibit F to Complaint)  On May 15, 2008, LabMD asked Tiversa to provide information from Tiversa's data store logs and the dates Tiversa claimed the 1718 File had been available on P2P networks.  (Complaint, ¶ 177)  On May 22, 2008, Tiversa sent another email to to LabMD about the 1718 file. (Complaint, ¶ 179; Exhibit G to Complaint)  Tiversa again contacted LabMD on June 6, 2008, July 15, 2008 and July 23, 2008 about the 1718 File.  (Complaint, ¶¶ 180-81; Exhibits I and J to Complaint)  On January 19, 2010, Alain Sheer of the

16

Federal Trade Commission informed LabMD that the FTC began a non-public inquiry into LabMD's cybersecurity practices arising from the same actions that form the basis of this action.  (Complaint, ¶ 212; Exhibit O to Complaint)

LabMD began an internal investigation of, and was on notice of, the problems that form the basis of this action beginning in 2008.  For example, on May 13, 2008, shortly after Tiversa first contacted LabMD, LabMD sought legal consultation regarding the same.  (Complaint, ¶ 308)  LabMD sought legal advice regarding this matter on several other occasions long before filing this action: on January 19, 2010 (concerning FTC inquiry); in August 2010 (for legal advice relating to Tiversa and the FTC); in March 2011 (for legal advice relating to Tiversa and the FTC); in September 2011 (for legal advice relating to Tiversa and the FTC); in September 2012 (for legal advice relating to Tiversa and the FTC) and in August 2013 (for legal advice relating to Tiversa and the FTC).  (Complaint, ¶¶ 309, 312-18)

LabMD's affirmative actions, beyond seeking legal advice pertaining to the claims asserted in this matter, also establish it had notice of the basis for this action no later than September 30, 2010.  On September 30, 2010, LabMD's General Counsel sent a letter to Tiversa, and copied LabMD's outside counsel, setting forth LabMD's purported knowledge of the facts that form the basis of this Complaint.

(Complaint, ¶ 321; Exhibit Q to Complaint)   The September 30, 2010 letter[3] set forth significant information regarding LabMD's knowledge of the purported claims it has now asserted in this action, including that LabMD was "conducting an investigation" into the "abuse and misappropriation of LabMD's property that may have involved any number of legal infractions, possibly including but not limited to, theft, conversion, extortion, trespass, privacy infringement, copyright infringement, computer crime, and misappropriation of trade secrets." (Complaint, ¶ 321; Exhibit Q to Complaint)   LabMD further admits in the September 30, 2010 letter that it was aware that the 1718 File was in Tiversa's, Dartmouth University's, and the FTC's possession. (Complaint, ¶ 321; Exhibit Q to Complaint)   LabMD declared that it had not "authorized or granted permission to anyone to take possession of the [1718 File]." (Complaint, ¶ 321; Exhibit Q to Complaint) LabMD also asked many questions to the recipients of the letters, most of which now form the basis of the Complaint.   For example, LabMD asked several questions which highlight LabMD's suspicions and notice of potential claims, including: whether Tiversa has a financial or business relationship with the FTC; for Tiversa to identify all communications with the FTC; and Tiversa's

---

[3] LabMD actually sent three letters establishing its knowledge of the basis for their claims.  The letters were sent to Dartmouth College, Office of General Counsel; Dr. M. Eric Johnson, Tuck School of Business; and Mr. Robert Boback, Tiversa.

justification for accessing, taking, and examining LabMD's property. (Complaint, ¶ 321; Exhibit Q to Complaint)   LabMD concludes the letter by requesting a response within 30 days, declaring: "LabMD takes a very dim view of this abuse of its property.   This is a serious investigation that may involve many stages." (Complaint, ¶ 321; Exhibit Q to Complaint)

On October 19, 2011 LabMD filed the Georgia II action.   In that action,[4] LabMD detailed the initial communications between Tiversa and LabMD from 2008 in depth, and alleged that Tiversa, Dartmouth, and Mr. Johnson "took personal property belonging to LabMD" as part of their pattern and practices. (Georgia II Complaint, ¶¶ 15, 72-95)   The Georgia II Complaint further alleged that in April 2009 Defendant Johnson, in concert with Defendants Tiversa and Dartmouth, published an article titled "Data Hemorrhages in the Health-Care Sector."   (Georgia II Complaint, ¶ 37)   The Georgia II Complaint claims the article contained a redacted copy of the 1718 File and LabMD admits the 1718 File was created and stored on a LabMD computer and was the personal property of LabMD.   (Georgia II Complaint, ¶¶ 46-50)

---

[4] The Court may take judicial notice of the Complaint filed in the Georgia II action, as it is a matter of public record. See Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x. 52, 53–54 (11th Cir. 2006)   (Court could take judicial notice of complaint filed in SEC enforcement proceeding without converting a motion to dismiss into a motion for summary judgment).

The Georgia II Complaint details LabMD's purported knowledge of Tiversa's alleged wrongdoing, like LabMD did in its September 30, 2010 letter. LabMD asserts claims against Tiversa and Mr. Johnson, claiming that Tiversa and Mr. Johnson, "intentionally accesse[d] LabMD's computers and networks and downloaded the 1,718 File without authorization" and that Tiversa did so "with the intent to extort money from LabMD." (Georgia II Complaint, ¶¶ 106, 108, 112) The Georgia II Complaint further alleged that "Tiversa downloaded the 1,718 File from LabMD's computer in order to facilitate the extortion of money and/or items of value from LabMD." (Georgia II Complaint, ¶ 116) The Georgia II Complaint also claimed that Tiversa and Mr. Johnson were subject to liability for "Computer Crimes" pursuant to O.C.G.A. § 16-9-93, (Georgia II Complaint, ¶¶ 119-137) and alleged that "Tiversa [and Mr. Johnson] used a computer network to search for, download, open and disseminate the 1,718 File," (Georgia II Complaint, ¶¶ 122, 129) as well as "took LabMD's personal property," (Georgia II Complaint, ¶¶ 124, 131) and "committed computer theft." (Georgia II Complaint, ¶ 135)

### A.    Federal RICO Conspiracy

Plaintiffs' Complaint asserts liability based upon federal RICO Conspiracy, 18 U.S.C. § 1962(d).  RICO claims are subject to a four year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 107 S. Ct.

2759, 97 L. Ed. 2d 121 (1987).  The Eleventh Circuit adopted the injury discovery rule as the standard for determining statute of limitations issues in civil RICO claims.  This requires a court to determine when plaintiffs knew, or should have known, of their injury and the source of the injury. Pac. Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F.3d 1246, 1251 (11th Cir. 2001), citing Rotella v. Wood, 528 U.S. 549, 552-53 (2000); Serpentfoot v. Rome City Commission, et al., 426 Fed. Appx. 884, 887 (11th Cir. 2011) ("We assume, without needing to decide, that the statute of limitations period starts from the date of discovery of the injury. Under the injury discovery rule, unless tolled, the statute of limitations under RICO is four years from the date the plaintiff knew it was injured."); Serpentfoot v. Rome City Commission, et al., 426 Fed. Appx. 884, 887 (11th Cir. 2011); Lehman v. Lucom, 2012 U.S. Dist. LEXIS 69057, 8-9 (S.D. Fla. May 17, 2012) ("Civil RICO actions are subject to a four-year statute of limitations.  The RICO statute of limitations begins to run on the date that a plaintiff knew, or should have known, of the injuries that justify the allegations in the complaint. This is known as the 'injury discovery rule.'") (internal citations omitted). Nothing more is required to trigger the running of the four year statute of limitations. Accrual begins upon awareness of injury, not upon awareness that injury constitutes a legal wrong.  Pac Harbor, 252 F.3d at 1251.

21

Plaintiffs filed their Complaint on July 8, 2016. Plaintiffs, however, knew of the issues of which they complain in 2008. On May 13, 2008 Plaintiffs knew of the alleged false reports by Tiversa regarding the 1718 File and how Tiversa found the 1718 File on P2P networks. LabMD investigated Tiversa's report and contacted Tiversa about the report on several occasions from May 2008 through July 2008. LabMD also sought legal counsel regarding these matters beginning in 2008 and continuing through 2013. (Complaint, ¶¶ 174-177, 309, 312-18; Exhibits F and G to Complaint) On January 19, 2010 the FTC informed LabMD that it began an inquiry into LabMD's cybersecurity practices regarding the same actions that form the basis for this Complaint. (Complaint, ¶ 217, Exhibit O to Complaint)

Importantly, on September 30, 2010 LabMD's General Counsel sent to Tiversa and others a letter setting forth its knowledge of the facts that form the basis of the claims asserted in the Complaint, including that LabMD was "conducting an investigation" into the matter (Complaint, ¶ 321; Exhibit Q to Complaint); that it knew the 1718 File was in Tiversa's, Dartmouth University's, and the FTC's possession (Complaint, ¶ 321; Exhibit Q to Complaint); and declared that it had not "authorized or granted permission to anyone to take possession of the [1718 File]." (Complaint, ¶321; Exhibit Q to Complaint)

LabMD had suspicions and notice of potential claims at that time and inquired whether Tiversa has a financial or business relationship with the FTC; for Tiversa to identify all communications with the FTC; and Tiversa's justification for accessing, taking, and examining LabMD's property.   (Exhibit Q to Complaint) Finally, on October 19, 2011 LabMD filed a lawsuit in Georgia state court based upon the same facts and actions by Tiversa asserted in this matter.

Plaintiffs knew or should have known of their injury and the source of their injury no later than September 30, 2010, more than four years prior to the filing of this Complaint in July 2016.   Plaintiffs' federal RICO Conspiracy claims are barred by the statute of limitations.

### B.      Georgia RICO and Georgia RICO Conspiracy

The statute of limitations for any offense under the Georgia RICO Act is five years from the date the conduct in violation of the statute terminates.  O.C.G.A. § 16-14-8.   Georgia's RICO statute was modeled after the federal statute and federal authority is persuasive in interpreting the Georgia statute.   <u>Williams General Corp. v. Stone</u>, 614 S.E.2d 758, 760 (Ga. 2005); <u>Morast v. Lance</u>, 807 F.2d 926, 933 (11th Cir. 1987).  Like the federal RICO statute, for purposes of statute of limitations the court determines when plaintiffs knew or should have known of their injury and the source of the injury.   The five-year statute of

limitations period for violations of the Georgia Rico Act "begins to run when the civil RICO cause of action accrues," which means "when the plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern."  Blalock v. Anneewakee, Inc., 426 S.E.2d 165, 167 (Ga. Ct. App. 1992); Cochran Mill Assocs. v. Stephens, 648 S.E.2d 764, 770 (Ga. Ct. App. 2007); Southern Intermodal Logistics v. D. J. Powers Co., 10 F. Supp. 2d 1337, 1356 (S.D. Ga. 1998).  Nothing more is required to trigger the running of the five year statute of limitations.

Based upon the same facts set forth above, Plaintiffs knew or should have known of their injury and the source of their injury no later than September 30, 2010, more than five years prior to the filing of the claims under the Georgia RICO conspiracy statute.   These claims are also barred by the applicable statute of limitations.

**V.     The Complaint Should Be Dismissed Because the Complaint Fails to State a Claim for Which Relief Can Be Granted under Iqbal and Twombly.**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167

L. Ed. 2d 929 (2007).   A complaint is facially plausible if it alleges sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.   However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id</u>.

In addition to pleading adequate factual content, the complaint also must be legally sufficient.   <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 555.   To determine the complaint's legal sufficiency, the court must accept as true all of the facts, but not the legal conclusions, alleged, draw all reasonable inferences in the plaintiff's favor, and confirm that the accepted-as-true facts actually give rise to a claim that would entitle the plaintiff to relief.   <u>Id</u>.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id</u>.   A plaintiff is required to make factual allegations which raise a right to relief above the level of speculation.   <u>Id</u>.   Naked assertions without factual enhancement do not suffice.   <u>Twombly</u>, 550 U.S. at 557.   A plaintiff must provide fair notice of his claim and the basis upon which the claim rests.   <u>Charles H. Wesley Educ. Found, Inc. v. Cox</u>, 408 F.3d 1349, 1352 (11th Cir. 2011).   A plaintiff's complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some

viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007).

This type of analysis has been regularly applied by the Eleventh Circuit and United States District Courts in Georgia to RICO and conspiracy claims. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (claims including substantive RICO (18 USC § 1962(c)) and RICO conspiracy (18 U.S.C. § 1962(d)) dismissed); Lawrence v. Thornburg Mortg. Home Loans Inc., 624 Fed. Appx. 721 (11th Cir. 2015) (affirming dismissal of pro se complaint containing conclusory allegations that "defendants collectively and individually participated in a conspiracy to retaliate" and "to commit fraud, misrepresentation and to violate well established laws"); Burgess v. Religious Tech. Ctr., Inc., 600 Fed. Appx. 657 (11th Cir. 2015) (affirming dismissal of RICO claims for lack of pleading specificity); Bowers v. Branch Banking & Trust Co., 2015 U.S. Dist. LEXIS 88298 (M.D. Ga. July 8, 2015) (Georgia RICO Act claim subject to Iqbal and Twombly analysis). Formulaic recitations of a conspiracy claim are insufficient to support a RICO claim and a cause of action based on such statements should be dismissed. Am. Dental, 605 F.3d at 1294.

If causes of action are based upon fraud, the Complaint must also comply with the heightened pleading standard set forth by Federal Rule of Civil Procedure 9(b).  ADA v. Cigna Corp, 605 F.3d 1283, 1291 (11th Cir. 2010).  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The 11th Circuit sets forth that a Plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  ADA, 605 F.3d at 1291, citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997).  "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006), quoting United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1310 (11th Cir. 2002).

In this instance, the causes of action asserted against Defendant Ponemon are formulaic in nature and littered with legal conclusions.  Plaintiffs' federal RICO Conspiracy claims merely allege legal conclusions that Defendant conspired involving certain predicate acts identified by statutory reference (Complaint,

¶490); knew the acts were part of a pattern of racketeering activity and agreed to the acts to further the scheme (Complaint, ¶ 491); and Defendant is liable for Plaintiffs' injuries (Complaint, ¶ 492). No facts are alleged to form a basis for the predicate acts, Defendant's actions in the conspiracy, or to whom those acts relate. The allegations are required to be disregarded under <u>Iqbal</u> and <u>Twombly</u> and cannot form the basis for any claims against Defendant. Plaintiffs' Georgia RICO Conspiracy claims assert the same formulaic legal conclusions (Complaint ¶¶ 517-519) and do not satisfy the standard articulated in <u>Iqbal</u> and <u>Twombly</u>.

Plaintiffs' Common Law Conspiracy count also alleges nothing more than legal conclusions that Defendant and other Defendants have a common design and purpose to benefit from theft and misrepresentation about security breaches (Complaint, ¶ 562); acted in concert with unlawful purpose and means in conspiracy (Complaint, ¶¶ 563-64); and caused damages (Complaint, ¶¶ 565-66). Plaintiffs do not allege any specific facts about how and when Defendant Ponemon conspired, what specific acts Defendant performed, or any other details. Likewise, regarding claims for Attorneys' Fees and Expenses, Plaintiffs' only assert the legal conclusion Plaintiffs are entitled to the same pursuant to statute. (Complaint, ¶¶ 569, 570) The allegations are required to be disregarded under <u>Iqbal</u> and <u>Twombly</u> and cannot form the basis for any claims against Defendant.

## VI.   Defendant's Actions Are Not The Proximate Cause Of Plaintiffs' Injury.

It is well established that a plaintiff seeking to prove a RICO injury must show the predicate act was the proximate cause of his injury.  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 456-457, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006). A civil RICO plaintiff is required to establish a "proximate-causal, 'direct relation' between the injury and injurious conduct at issue."   Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 712-13 (11th Cir. 2014), citing Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)); Hemi Grp., LLC v. City of New York, 559 U.S. 1, 17, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010).  To meet this requirement, a RICO defendant's conduct must be a substantial factor in the sequence of responsible causation and defendant's racketeering activity must be more than merely a "but for" cause of harm.  Id. Courts should examine proximate cause at the pleading stage and evaluate whether the injury asserted is caused by the claimed RICO violations.  Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1287 (11th Cir. 2006) (per curium).

Georgia RICO claims demand the same causation requirement.  O.C.G.A. § 16-14-6(c).   Georgia courts employ the Anza proximate cause standard to determine if an injury is "by reason of" a RICO predicate act.  American Ass'n of Cab Companies, Inc. v. Parham, 661 S.E.2d 161, 167 (Ga. Ct. App. 2008);

Brantley v. Muscogee County School Dist., No. 4:10-CV-77 (CDL), 2011 WL 3706567, at *8 (M.D.Ga. Aug. 24, 2011); see also Williams General Corp. v. Stone, 614 S.E.2d 758, 760 (Ga. 2005).

   Plaintiffs' RICO claims should be dismissed because Plaintiffs have failed to allege they were injured by reason of Defendant Ponemon's alleged pattern of racketeering activity.   Plaintiffs' injuries, in fact, were caused by the FTC's investigation and enforcement action against LabMD and Plaintiffs concede this to be the case.   (Complaint, ¶¶ 9, 216); see also LabMD's Application for Stay of Final Order at p. 5 in In the Matter of LabMD, Inc., Docket No. 9357, attached hereto as Exhibit B.   There are no facts alleged that Defendant Ponemon acted as an agent of the FTC, that Defendant Ponemon had any power over the FTC or *vice versa*, or there was any enterprise or relationship between Defendant Ponemon and the FTC whatsoever.   In fact, only the FTC itself can make the determination to issue a complaint.   16 C.F.R. § 3.11(a); see also In the Matter of LabMD, Inc., Docket No. 9357, Opinion of Commission at p. 4, July 29, 2016 attached hereto as Exhibit C.   Moreover, the FTC determined that LabMD's own acts and data protection failures, not any other individual's or entity's acts, caused sensitive information to be disclosed resulting in the FTC investigation and enforcement

action against it.  See In the Matter of LabMD, Inc., Docket No. 9357, Opinion of Commission at pp. 1 and 32, July 29, 2016 attached hereto as Exhibit C.

None of the alleged predicate acts asserted against Defendant Ponemon support a direct causal link to support Plaintiffs' RICO allegations.  None of the claims or predicate acts asserted directly caused the FTC investigation which began on or about January 19, 2010.  The FTC did not rely on Defendant Ponemon when making its rulings.  (In the Matter of LabMD, Inc., Docket No. 9357, Opinion of Commission at p. 32, Exhibit C)  Because there is no direct relationship between Defendant Ponemon's conduct and the FTC investigation and enforcement action, Plaintiffs' claims should be dismissed.

## VII.   Counts II and IV of the Complaint Must Be Dismissed Because No Substantive RICO Claims Are Asserted Against Defendant.

No substantive federal or Georgia RICO claims are asserted against Defendant Ponemon.  (Complaint, ¶¶ 427, 494)  Further, the RICO conspiracy claims (both federal and state) do not contain additional allegations of conspiracy or RICO violation.  The allegations simply contain legal conclusions that Defendant conspired to commit certain conduct.  (Complaint, ¶¶ 490-492, 517-519)  This is insufficient as a matter of law to assert a federal RICO conspiracy claim and those conspiracy claims should be dismissed.  Jackson v.

Bellsouth Telecommunications, 372 F.3d 1250, 1269 (11th Cir. 2004); Am. Dental, 605 F.3d at 1296 n. 6.

Georgia's RICO statute was modeled after the federal statute and federal authority is persuasive in interpreting the Georgia statute.  Williams, 614 S.E.2d at 760; Morast, 807 F.2d at 933.   Therefore, Georgia RICO conspiracy claims should not be permitted when, as in this case, no substantive Georgia RICO claim is asserted against Defendant.

## VIII.  Count XI of the Complaint Should Be Dismissed Because There is no Underlying Tort to Support the Common Law Conspiracy Claim.

Conspiracy is not a valid cause of action under Georgia law without two or more persons, acting in concert, engaged in conduct that constitutes a tort.  See Bowers v. Branch Banking & Trust Co., 2015 U.S. Dist. LEXIS 88298, quoting Nalley v. Langdale, 734 S.E.2d 908, 915 n.15 (Ga. 2012) (M.D. Ga. July 8, 2015) ("Where a plaintiff seeks to impose civil liability for a conspiracy, the conspiracy in and of itself furnishes no independent cause of action.  Rather, the gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.")  See also Iguana, LLC v. Lanham, 628  F.Supp.2d  1361,  1370  (M.D.  Ga.  2008)  (citing Mustaqeem-Graydon v. Sun Trust Bank, 258 Ga. Ct. App. 200, 207 (2002)). Plaintiffs have not alleged any facts establishing any involvement by Defendant in

any underlying tort to support the Common Law Conspiracy claim.  Plaintiffs have not even referenced or implicated Defendant in Count V (Computer Fraud and Abuse Act), Count VI (Georgia Computer Crimes), Count VII (Common Law Fraud), Count VIII (Common Law Negligence), Count IX (Fraudulent Misrepresentation) and Count X (Negligent Misrepresentation).  (Complaint, ¶¶ 520-559)  Count XI of the Complaint should be dismissed.

## IX.     Count XII of the Complaint Must Be Dismissed Because There is no Cause of Action in Georgia for Attorneys' Fees and Expenses.

Count XII of the Complaint seeking attorneys' fees and expenses under O.C.G.A § 13-6-11 should also be dismissed.  It is well established that "O.C.G.A. § 13-6-11 does not create an independent cause of action.  That statute merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of his damages."  Brown v. Baker, 398 S.E.2d 797, 799 (Ga. Ct. App. 1990); Monge v. Madison County Record, Inc., 802 F. Supp. 2d 1327, 1339 (N.D. Ga. 2011); Lamb v. Salvage Disposal Co., 535 S.E.2d 258 (Ga. Ct. App. 2000).  Plaintiffs' count for attorneys' fees and expenses is improper and should be dismissed.

## X.     Michael Daugherty Lacks Standing To Bring His RICO Claims.

Plaintiff Michael J. Daugherty lacks standing to bring the RICO claims, and for this reason, his claims should be dismissed under Fed. R. Civ. P. 12(b)(1).  See

Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n. 6 (2nd Cir. 2006) (standing should be raised under Rule 12(b)(1)).   The federal RICO standing statute provides that "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . ." 18 U.S.C. § 1964(c).   The injury must be a direct result of the alleged racketeering activity.   Bivens Gardens Office Bldg. v. Barnett Banks, Inc., 140 F.3d 898, 906 (11th Cir. 1998).   As such, "RICO standing will not arise solely because one is a shareholder or a limited partner in a company that was the target of the alleged RICO violation.   Id.   The Complaint describes injuries suffered by LabMD, but does not allege any specific harm against Mr. Daugherty.   (Complaint, ¶ 150)   As Mr. Daugherty has not alleged any standing to bring federal RICO claims, he lacks standing under the Georgia RICO statute as well.   See Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1294 (11th Cir. 2006) ("Georgia courts look to federal authority in determining RICO standing.").   Thus, all of Mr. Daugherty's RICO claims must be dismissed.

## XI.    Conclusion

For the reasons discussed herein, Plaintiffs' Complaint asserted against

Defendant Ponemon should be dismissed.

/s/ Matthew G. Moffett
Matthew G. Moffett
Georgia Bar No. 515323
Tynetra G. Evans
Georgia Bar No. 422171

## <u>CERTIFICATE OF COMPLIANCE AS TO FONT SIZE</u>

Pursuant to the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing complies with the font and point selections approved by the Court in Local Rule 5.1C. The foregoing was prepared on a computer using Times New Roman font size 14 point.

GRAY, RUST, ST. AMAND,
MOFFETT & BRIESKE
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326
(404) 870-7390 – telephone
(404) 870-1030 – facsimile
mmoffett@grsmb.com
tevans@grsmb.com

/s/ Matthew G. Moffett
Matthew G. Moffett
Georgia Bar No. 515323
Tynetra G. Evans
Georgia Bar No. 422171

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MICHAEL J. DAUGHERTY and
LABMD, INC.,

               Plaintiffs,

      v.

JOEL P. ADAMS; DAVID J.
BECKER; ROBERT J. BOBACK;
ANJU S. CHOPRA; WESLEY K.
CLARK, SR.; JOHN C.
HANSBERRY; SAM P.
HOPKINS; M. ERIC JOHNSON;
ERIC D. KLINE; DANIEL J.
KOPCHAK; LARRY PONEMON;
HOWARD SCHMIDT; KEITH E.
TAGLIAFERRI; BRIAN J.
TARQUINIO; MORGAN, LEWIS
AND BOCKIUS, LLP; PEPPER
HAMILTON LLP; TIVERSA
HOLDING CORP.; TRUSTEES
OF DARTMOUTH COLLEGE;
and DOES 1 – 10.

               Defendants.

CIVIL ACTION NO.
1:16-cv-02480-LMM

**<u>JURY TRIAL DEMANDED</u>**

**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that on October 26, 2016, I electronically filed the foregoing

**LARRY PONEMON'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to counsel for all parties of record electronically by CM/ECF.

| | |
|---|---|
| **James W. Hawkins**<br>James W. Hawkins LLC<br>11339 Musette Circle<br>Alpharetta, GA 30009<br>jhawkins@jameswhawkinsllc.com<br><br>*Counsel for Plaintiffs* | **Michael P. Kenny**<br>**William Roy Mitchelson, Jr.**<br>Alston & Bird<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424<br>mike.kenny@alston.com<br>mmitchelson@alston.com<br><br>*Counsel for Defendant John C.*<br>*Hansberry and Pepper Hamilton LLP* |
| **Jeffrey L. Mapen**<br>**Peter L. Munk**<br>**Richard Kennon Hines, V**<br>Nelson Mullins Riley & Scarborough,<br>LLP-ATL<br>201 17th Street NW<br>Suite 1700<br>Atlanta, GA 30363<br>jeff.mapen@nelsonmullins.com<br>Peter.munk@nelsonmullins.com<br>Richard.hines@nelsonmullins.com<br><br>*Counsel for Defendant M. Eric Johnson*<br>*and Trustees of Dartmouth College* | **David Lewis Balser**<br>King & Spalding, LLP-ATL 40<br>40th Floor<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309-3521<br>Email: dbalser@kslaw.com<br><br>*Counsel for Defendant Eric D. Kline,*<br>*and Morgan, Lewis and Brockius, LLP* |

| | |
|---|---|
| **Jarrod Shaw**<br>McGuire Woods LLP,- PA<br>625 Liberty Avenue<br>23rd Floor<br>Pittsburgh, PA 15222<br>Email: jshaw@mcguirewoods.com<br><br>*Counsel for Tiversa Holding Corp.* | **Nathan A. Wood**<br>McGuire Woods LLP-GA<br>1230 Peachtree Street, N.E.<br>Promenade, Suite 2100<br>Atlanta, GA 30309-3534<br>Email: nwood@mcguirewoods.com<br><br>*Counsel for Tiversa Holding Corp.* |

GRAY, RUST, ST. AMAND,
MOFFETT & BRIESKE
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326
(404) 870-7390 – telephone
(404) 870-1030 – facsimile
mmoffett@grsmb.com
tevans@grsmb.com

/s/ Matthew G. Moffett
Matthew G. Moffett
Georgia Bar No. 515323
Tynetra G. Evans
Georgia Bar No. 422171

4996428.1